U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAFAYETTE

FEB 0 1 2013

TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Parker, et al                                           Civil Action No. 6:12-2679

versus                                                   Judge Richard T. Haik, Sr.

Pro-West Contractors, LLC,                      Magistrate Judge C. Michael Hill
et al

## MEMORANDUM ORDER

Before the Court is a Motion To Dismiss filed by defendants, Pro-West Contractors, LLC ("Pro-West"), and Robert Gilman ("Gilman") [Rec. Doc. 6], plaintiff's Opposition to the Motion To Dismiss [Rec. Doc. 10], defendants' Reply Memorandum thereto [Rec. Doc. 18] and plaintiff's Opposition to defendants' Reply [Rec. 16].

*I. Background*

This matter arises out of plaintiff, Jonathan Parker's, purported contract dispute involving work on the Bonanza Channel Bridge in Nome, Alaska for Pro-West ("the Project"). *R. 1, Complaint; R. 6, Exh. A, Aff. Of Gilman, at ¶ 5.* Plaintiff alleges that his company, Omnitech, provided services to Pro-West through "it's subcontract employees Kenneth Cason and John 'Bill' Perlaki" from July 23 through September 23, 2012. *R. 1, ¶ 3.* Plaintiff further alleges that defendants owe the amounts of two invoices in the amount of $29,932.10 due on September 23, 2010 and $35,880.10 due on October 10, 2012 with a 1 ½% monthly interest rate. *Id. at ¶ 4.* Plaintiff also alleges that "defendants advised [plaintiff] that they had an invoice in another company's name for the same work performed by Omnitech [and that] Omnitech advised the defendants that they have already voided out and sent the defendants a corrected invoice for payment in Omnitech's name and not the expartnering company's name." *Id. at ¶ 6.*

In their motion to dismiss, defendants submit the sworn affidavit of Robert Gilman, President of Pro-West, who states that Pro-West is an Alaskan company headquartered in

Wasilla, Alaska, which was awarded the contract for the Project by the Alaska Department of Transportation & Public Facilities on January 13, 2012. *R. 6, Aff. Of Gilman at* ¶ 5. Gilman further states that Pro-West posted information online for bidders interested in completing some of the work on the Project, which was available for downloading free of charge. *Id.* Pro-West received numerous proposals for the Project, including a bid from Flanagan Inspection & Testing, LLC ("Flanagan"). Gilman states that Pro-West selected Flanagan and negotiated a contract over the phone and via e-mail. *Id.* Pro-West executed a "Subcontractor Agreement" dated June 7, 2012, in Wasilla, Alaska, and then sent it via e-mail to Flanagan to execute.[1] *Id., Exh. A.* The Agreement in the record is not executed by Flanagan. *Id.* In an affidavit by Larion (Larry) Barsukoff, General Manager of Pro-West, Barsukoff states that he was in contact with both Omnitech, LLC and Flanagan Inspection & Testing, LLC regarding payment for work done on the Project." *R. 18, Exh. A.* Barsukoff further states that plaintiff represented that he was a manager of Flanagan, however, after he had prepared a check to send to Flanagan, *Id.*, Pro-West "received notice that Omnitech was also claiming the funds. *Id.* After plaintiff filed this lawsuit, on November 29, 2012, ProWest filed a Complaint For Interpleader against Flanagan and Omnitech in Alaska State Court, Case No. 3AN-12-11290 CI, placing the monetary amount at issue into the registry of the court. *Id.*

Plaintiff's Opposition Memorandum confirms Gilman's statement that plaintiff first contacted Pro-West, "[plaintiff] contacted and sent a service proposal to most of the prime contractors who were bidding on the [Project]," including a proposal from Omnitech to Casey Long, at Pro-West on November 15, 2011, which was before Pro-West was awarded the contract. *R. 10, p. 1, Exh. B.* Plaintiff disputes, however, that Pro-West entered into a

---

[1] The Agreement indicates Flanagan's address as 304 La Rue France, Suite 108, Lafayette, LA. 70508. *Id., Exh. A.*

2.

contract with Flanagan. Rather, plaintiff submits a Subcontractor Agreement which is identical to the Subcontractor Agreement attached to Gilman's affidavit except that it is dated August 1, 2012, identifies "Omnitech, LLC" as the Subcontractor and is executed only by Jonathan Parker, Owner.[2] *Id. at Exh. G.* Plaintiff further submits that the email dated October 1, 2012 from Pro-West's General Manager, Larry Barsukoff, requesting Flanagan's contact information establishes that Pro-West never had a bid proposal from Flanagan, which plaintiff states was "Omnitech's joint venture's firm name." *R. 10 at p. 3.* Plaintiff cites defendants' Reply memorandum which contains a Louisiana Secretary of State document providing that "Henry Flanagan" is a Registered Agent of Omnitech, LLC along with plaintiff. *R. 18-2, Exh. B.* Plaintiff states that Omnitech and Flanagan were no longer working together at the time the work was performed which accounts for the Subcontractor Agreement never being signed. *R. 10 at p. 3.* Instead, plaintiff contends, "Omnitech retained all rights to [the Project] which it had in the Pro-West/Omnitech initial verbal agreement." *Id.* Ultimately, plaintiff contends, "Pro-West concocted the Flanagan scheme in order to avoid paying Omnitech," while Pro-West represents that it "has withheld payment from Flanagan and Omnitech for fear of paying the wrong company". *Id. at p. 4.* Plaintiff's Opposition to defendants' reply, however, undermines this contention. Plaintiff's Opposition Memorandum contains an email dated October 1, 2012, which provides, *inter alia,* "I was contacted by Henry [Flanagan] telling me that the workers on the bridge were under the Flanagan Inspection insurance policy and that he was going to be cancelling the policy. In fact, the insurance coverage for the men on site being in Flanagan's name complicates matters further.... The problem is that we currently have an invoice from Flanagan Inspection.

---

[2] The Agreement indicates Omnitech's address is the same as Flanagan's address - 304 La Rue France, Suite 108, Lafayette, LA. 70508. *Id.*

3.

I need to clear this up on our end so that we do not face additional claims for payment." *R. 16, Exh. T.*

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action where the Court lacks personal jurisdiction over the defendant. When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that in personam jurisdiction exists. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.1994); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir.1985). The plaintiff need not, however, establish personal jurisdiction by a preponderance of the evidence; prima facie evidence of personal jurisdiction is sufficient. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir.1989); *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir.1982). The court may resolve a jurisdictional issue by reviewing pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof. *Command–Aire v. Ontario Mechanical Sales & Serv., Inc.*, 963 F.2d 90, 95 (5th Cir.1992). Allegations of the plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits. *Wyatt*, 686 F.2d at 282–83 n. 13. The law, however, does not require the court to credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir.2001). Any genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for purposes of determining whether a prima facie case exists. *Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir.1992).

## III. Law and Analysis

Defendants filed this motion moving the Court to dismiss plaintiff's' claims because: "(1) this Court lacks personal jurisdiction over Pro-West and Gilman; (2) it lacks subject matter jurisdiction over this dispute because the amount in controversy does not exceed

4.

$75,000; and (3) venue is improper in the Western District of Louisiana." Defendants further move to "dismiss all claims by plaintiff Omnitech because Parker, who is pro se, improperly purports to represent Omnitech." R. 6.

While the Complaint names Omnitech, LLC as a party-plaintiff, the record of this action does not indicate that counsel has enrolled on behalf of Omnitech. The Fifth Circuit has held "that a corporation as a fictional legal person can only be represented by licensed counsel." *Donovan v. Road Rangers Country Junction, Inc.*, 736 F.2d 1004, 1005 (5th Cir.1984), cert. denied, 469 U.S. 1217 (1985) (citing *K.M.A., Inc. v. Gen. Motors Acceptance Corp.*, 652 F.2d 398, 399 (5th Cir.1982)). Similarly, a partnership may only appear in court through counsel. *Collier v. Cobalt, LLC*, 2002 WL 726640, 1 (E.D.La.,2002) (citing *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1309-10 (2d Cir.1991)). Because "an LLC is a hybrid of a corporation and a partnership, "an LLC should be governed on this issue by the same rules that apply to those entities." *Collier* (quoting *In re ICLNDS Notes Acquisition, LLC*, 259 B.R. 289, 294 ((Bankr.N.D.Ohio 2001). Thus, Omnitech may only appear in court through counsel and may not be represented by Parker. Accordingly, the Court will not consider Omnitech as a proper party for purposes of this motion.

"Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter, but there are circumstances in which a district court appropriately accords priority to a personal jurisdiction inquiry." *Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999). Lower courts may "consider the complexity of subject-matter jurisdiction issues raised by the case, as well as concerns of federalism, and of judicial economy and restraint in determining whether to dismiss claims due to a lack of personal jurisdiction before considering challenges to its subject-matter jurisdiction." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 213 (5th Cir.2000). Accordingly, the Court will consider defendants' motion to dismiss for lack of personal jurisdiction first.

A. Personal Jurisdiction

In a diversity suit such as this one, a federal court's jurisdiction is delimited by the Due Process Clause of the Fourteenth Amendment and the forum state's long-arm statute. *See Wilson v. Belin*, 20 F.3d 644, 646-647 (5th Cir.1994) (citing *Bullion v. Gillespie*, 895 F.2d 213, 215 (5th Cir.1990)). Louisiana's "long-arm" statute extends jurisdiction to the constitutional limit, La. R.S. 13:3201(B), so the due process and long-arm inquiries fold into one. *Luv n' care, Ltd.*, 438 F.3d at 469. Due process requires that the no federal court assert in personam jurisdiction over a nonresident defendant unless that defendant has "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Personal jurisdiction can be either general or specific. Specific jurisdiction may be exercised where the suit arises out of or is related to the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n.8 (1984). The court may exercise general jurisdiction when the defendant has "continuous and systematic general business contacts" with the forum state, but the contacts are not necessarily related to the lawsuit. *Id.* at 414-15. Plaintiff's Opposition does not address Pro-West and Gilman's argument that this Court cannot exercise general jurisdiction based on continuous and systematic contacts. Moreover, this Court does not find a set of facts that establish general jurisdiction. Therefore, only specific jurisdiction is at issue.

The Fifth Circuit has consolidated the specific jurisdiction inquiry into a three-step analysis: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of

personal jurisdiction is fair and reasonable. *Nuovo Pignone v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir.2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir.2006) (citing *Nuovo Pignone*, 310 F.3d at 382).

Pro-West and Gilman assert that they have not purposefully established significant contact with Louisiana to satisfy specific jurisdiction. For specific jurisdiction to exist, the plaintiff's' cause of action needs to arise out of or directly relate to any purposeful contacts with the State of Louisiana. *Ernst v. Jesse L. Riddle, P.C.*, 964 F.Supp. 213, 217 (M.D.La.,1997). Plaintiff must prove that the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Electrosource, Inc. v. Horizon Battery Technologies, Ltd.*,176 F.3d 867, 871-872 (5th Cir. 1999) (citing *International Shoe Co.*, 326 U.S. at 319). "[T]his purposeful availment element 'ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.'" *Id.* (citing *Burger King*, 471 U.S. at 475).

In an uncontested affidavit, Robert Gilman, Pro-West's President, stated that Pro-West: 1) has no contacts with Louisiana; 2) has never transacted business in Louisiana; 2) maintains no office or other physical presence in Louisiana; 3) has no employees in Louisiana; 4) does not and never has owned real or other property in Louisiana; 5) has no agent in Louisiana; 6) has never participated in a construction project in Louisiana; 7) is not licensed to do business in Louisiana; and 8) none of its employees has ever been to Louisiana to conduct business on behalf of Pro-West. *R. 6, Exh. B, Aff. Of Gilman*.

In his Opposition Memorandum, plaintiff contends that defendants have a connection to Louisiana "by having conducted business with Parker." *R. 10, p.2.* In support of this contention, plaintiff states that he "maintains close to 200 project emails that include over 120 project daily reports and project pictures that include a ProWest's representative email address." Plaintiff, however, provides no support for his contention. Plaintiff also cites specific contacts which he argues permit this Court to exercise jurisdiction over defendants. First, plaintiff claims that Casey Long, an employee of Pro-West, read "the email (service proposal) that Parker sent for coating inspection services on November 15, 2011." *Id.* The record contains a receipt indicating Long received an email from Parker on November 15, 2011 and an email from Long to "OmniTech, Jonathan Parker" dated March 8, 2012, stating that Pro-West is "looking at needing an inspector for the Nome Bonanza Bridge Project approximately the third week in June." *Id. at Exh. C, D.* Next, plaintiff asserts that "Pro-West and Gilman directed the work of two Omnitech employees on this project." *R. 10, p. 2.* The exhibits attached to plaintiff's' Opposition Memorandum, however, indicate the "Omnitech employees" were in fact independent contractors, one from Texas and the other from North Carolina. *Id., Exh. J.* Finally, plaintiff claims the Court should assert jurisdiction because Pro-West notified plaintiff via email on November 16, 2012, that one of the independent contractors fell in Alaska while under "Pro-West's direction, analysis and appraisal" having "direct consequences on Omnitech in the State of Louisiana." Plaintiff does not specify how Pro-West's employee's reading of an email while at his desk in Alaska about an Alaskan project or how the activities of non-Louisiana independent contractors' activities in Alaska arise out of or directly relate to contacts such that Pro-West purposefully availed itself of the privilege of conducting activities within the State of Louisiana.

The Court finds that plaintiff has failed to show the minimum contacts necessary to establish specific jurisdiction. First, it is undisputed that plaintiff made the initial contact

8.

with Pro-West in Alaska, whether under his association with Flanagan or Omnitech, when he submitted a proposal after learning through online searching that Pro-West was among the contractors bidding on the Project. Moreover, the quality of Pro-West's other alleged contacts, all either email or telephone communications, are insufficient to establish the minimum contacts needed to subject it to specific jurisdiction in Louisiana. In a breach of contract case, to determine whether a party established minimum contacts, a court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing...." *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir.1999). The Fifth Circuit has repeatedly held that "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir.1986); *See, Colwell Realty Investments v. Triple T Inns of Arizona, Inc.*, 785 F.2d 1330, 1334 (5th Cir.1986).

      A party's communication during the formation and performance of a contract among other activities related to the forum state, will not necessarily support the exercise of personal jurisdiction. *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir.1996) (citing *Stuart*, 772 F.2d at 1193). For example, in *Holt Oil & Gas Corp.* at 778, the nonresident defendant engaged in extensive telephone communication with the plaintiff, contracted with the plaintiff, and sent checks to the plaintiff, however, specific jurisdiction was not found. Likewise, in *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026 (5th Cir.1983), where extensive communication took place between the parties, and additional activity included visitations to the forum state and the acceptance of a contract offer in the forum state, personal jurisdiction was not established. Applying the applicable jurisprudence, neither the communications between plaintiff and Pro-West prior to and

during performance of the purported contract nor the non-forum activities of plaintiff's independent contractors is sufficient to support specific jurisdiction over Pro-West.

Because defendants do not have minimum contacts with Louisiana, the Court need not determine whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *Felch v. Transportes Lar–Mex SA DE CV*, 92 F.3d 320, 329 n. 20 (5th Cir.1996) ("Because we find that the first due process condition of minimum contacts was not satisfied, we need not address whether the exercise of personal jurisdiction in this case would offend traditional notions of fair play and substantial justice"). Also, as the Court finds the issue of personal jurisdiction dispositive, it need not address the remaining grounds of the motion to dismiss.

### *IV. Conclusion*

As provided in the foregoing, the Court concludes that the notion to dismiss should be granted for want of personal jurisdiction. Therefore,

**IT IS ORDERED** that the Motion To Dismiss filed by defendants, Pro-West Contractors, LLC and Robert Gilman, [Rec. Doc. 6 ] is **GRANTED** and plaintiff's claims are **DISMISSED WITHOUT PREJUDICE** for want of personal jurisdiction.

Thus done and signed this 1st day of February, 2013 at Lafayette, Louisiana.

_____
RICHARD T. HAIK, SR.
UNITED STATES DISTRICT JUDGE